Cases 06-3084, Remoran v. OPM, and 06-5049, Liggins v. U.S., both of which will be submitted on the record. First case is Puente v. DHS.  Can you say, reserve four minutes for rebuttal. Yes, Your Honor. Thank you. Good morning. My name is Goni Frieder-Goldberg for Mr. Puente Petitioner. May it please the Court, the arbitrator committed reversible error when he conflated the entry of NOAA contendere with guilty plea and a conviction. The arbitrator's decision demonstrates such a critical error of both law and fact that this Court is required to reverse the decision with regard to both reasons for termination. The parties had in fact stipulated that Mr. Puente did not plead guilty to any crime, and the parties had stipulated that Mr. Puente was not convicted of any crime. But isn't that a problem for you? Because granted the arbitrator used the word convicted, I think, in quotes. Clearly, we all know that the arbitrator was well aware that technically there was no conviction at the time. That's what you've just acknowledged, that the parties stipulated that. There was no dispute on that. So whether the arbitrator did or did not use shorthand conviction in quotes, why does that in and of itself matter to us? I mean, the conduct, nobody's disputing the facts, the facts of what happened, what this person allegedly did, and what happened to him through the legal process, correct? No dispute. Well, I would say that based on the agency's chief decision-maker, the deciding official whose title is chief, there is a dispute because the agency clearly thought that Mr. Puente pled guilty and that Mr. Puente was convicted of a crime. He says as much repeatedly in his testimony at arbitration. And while it is true that the arbitrator puts conviction in quotes at the very beginning, he then also repeats the words pled guilty and conviction repeatedly. And in fact, the Department of Justice brief uses the word pled guilty 18 times. So this type of shorthand is inappropriate for such a term of art. As a matter of law, pled guilty has a legal significance. When Mr. Puente stood in front of the state court judge in connection with the plea arrangement, I thought the record reflected that Mr. Puente confessed to having engaged in the alleged, in the charged conduct. There was, in fact, an allocution which is required as part of the Nolo contendere plea. But the case law is also clear that that is not an adjudication of guilt. That is merely an allocation. We're not talking guilt. We're just talking about the conduct. Well, the conduct, however, was not specified as a specification for either reason that formed the basis of his termination. The only reasons given was conduct unbecoming an officer, and the specification did not include the underlying facts of the criminal charge. It only relied upon the actual criminal process. And similar to that in Underwood, in which it is listed, Underwood versus United States Postal Service, I apologize, in which it is listed as part of the specification for the basis of the termination. On such and such date, you were arrested. On such and such date, you were indicted. And on such and such date, you were convicted. That's Underwood. Here we don't have a conviction. If, for example, the charge had simply, when they papered it up, they'd said, Mr. Pointy, on the charge of conduct unbecoming, you confessed to the federal, to the state court judge that you did what you were alleged to have done, and beating up your wife and harming her with a candle holder and brandishing the gun is conduct unbecoming. If that had been what was written up in the paper, you wouldn't have any objection, right? Well, I might have an objection, but that wasn't what was written up in the paper, and I think that's critical. As discussed in O'Connor, which is also an MSPB case, there is a difference, a due process violation if the evidence relied upon that there had been no criminal charge here at all. For example, if Mrs. Pointy, when she called the boss and he came over, if subsequently Mr. Pointy had said to his boss, yes, indeed, I did engage in that conduct, that would certainly seem to me to form an adequate predicate for conduct unbecoming. That perhaps is true, but that is not what happened here, and that is what is crucial. That Mr. Pointy was not notified properly, he was not given proper notice for the evidence that was relied upon, and that is actually our second claim as to why this court has the requirement to reverse. The arbitrator relied on evidence, as did the agency, that was not noticed to Mr. Pointy in the charging documents for termination. But there were two... I'm sorry? We've got two reasons. I think I understand the argument with respect to the second reason on the qualifications. But on the first, what's wrong with the specification? There's no conviction mentioned in the specification. Everything you would agree, would you not, that all of the facts, everything laid out in Specification 1 is absolutely uncontroverted. That's correct. The actual specifications for reason number one are factually true. There are two problems with the specification. The first problem is that the arrest and indictment in and of themselves are not sufficient to form the basis of a termination by MSPB case law. Well, you're skipping a point where you say it's not enough for termination. The first question is whether or not it's sufficient basis to affirm the reason of conduct unbecoming an officer, whether or not the penalty for that is removal or suspension or whatever is another issue. The question is whether that conduct listed there in Spec 1 is sufficient basis to justify the reason of the agency's conclusion this was conduct unbecoming an officer. On what basis would we say it's not? Well, the basis is, Your Honor, if you look at the record, that the agency and the arbitrator both conflated the words nolo contendere to mean something quite different. And they both conflated the words nolo contendere to mean pled guilty and convicted. If you look at the underlying evidence, Chief Montoya says, I understood nolo contendere to mean pled guilty and convicted. And, therefore, he made the nexus between the conduct unbecoming the officer, as did the arbitrator, not between nolo contendere and conduct unbecoming an officer. He made the nexus between pled guilty and convicted and conduct unbecoming an officer. And, therefore, there was no proper basis for the finding of conduct unbecoming an officer in this case. But under the first specification, though, there was no indication that it was based upon a conviction. It was based upon the acts which led up to the arrest. Again, that is what they argued at arbitration. And that would be improper exactly because in the same way Underwood, the MSPB, found that it was improper because there was no charging, there were no specifications about the underlying conduct as a specification for reason one. But in Underwood, though, was that a conviction that was being raised? In Underwood, that was a conviction, but the entire specification, and that's what distinguishes it from this case. But why it's analogous to this case is because the actual specification says on X date, you were arrested. On X date, you were indicted. And on X date, you were convicted. And then when... But what if the specification said that on X day, you waived your gun improperly? Well, that would be... And there was nothing else. That would be... Would that be sufficient? That would be a completely different case than the one before you today. Why would that be the case? Because there was no indication there except the fact that the waiving of the gun then led to the arrest. So the arrest was part of the specification, but not the conviction. Well, alleged waiving of the gun. There was a lot of evidence that he did not actually waive a gun. And that is exactly why notification is so important. Because he did not present a full defense as to the underlying charges. Because he... Underlying facts to the criminal case. Because he understood, based on the termination documents, that only the criminal process was at issue. He being Mr. Poindexter. I assume for purposes of argument only that we disagree with you on the conduct unbecoming issue and that we affirm the arbitrator's decision that the conduct unbecoming charge was sustained. But that we agree with you on the so-called qualification issue. What's the right result then? Well, Your Honor, since this case wasn't properly evaluated by the arbitrator, there could be two possible results. First, it could be remanded. Or second, you could overturn the agency decision based on the failure to support their charges because... Well, how can we... I mean, this involves our LaChanze and Duvall case, Guiz against the Department of Justice and a whole mess of other cases that deal with the situation of what happens when, at this court level, where the board or the arbitrator has sustained both charges like it's a table with two legs and we kick one leg out. So how can we know whether the agency would have removed Mr. Poindexter solely for the conduct unbecoming charge? Well, Your Honor, if you look at the actual termination proposal, they do repeat a few times how he was not qualified. And I can direct your attention, Your Honor, that joint appendix specifically... Yeah, if you look at A369, J369, which is the proposing letter, you get reason one, which is the spec having to do with conduct unbecoming, no discussion at all. And the balance of the great discussion is on the qualification issue. And he said your inability to meet the conditions or employment establishes the nexus, which would certainly suggest that it was the qualifications issue that was really bothering them. But then when you look at the actual notice of removal, which is at J386, you'll see that I find spec one, reason one, and spec one, reason two, are both proven, therefore reason are sustained based on this finding your removal is warranted. Yes. So the removal is for both, presumably. Presumably the removal is for both. I have two responses, however. First, I think the line that you read on page J369 is really crucial. Their nexus is based on the failure for him to carry a gun. The inability to meet the necessary conditions of your employment establishes the nexus. And in the instant case, there was no inability to carry a gun for the purposes of his law enforcement duties. And therefore, the thrust of their proposal is based on this belief that he was unable to carry a gun, which was a mistake, both of law and of fact. Well, that then gets us to the question of whether or not I said assume for purposes of argument that we agree with you on the qualifications issue. The government, in essence, confesses error in a way, and the government will have a chance to respond. And the government says, oh, well, of course there's no conviction here because the NOLA plea isn't a conviction, so the Lautenberg Law doesn't come into play. That's correct. So he can't be denied the right to carry a weapon under Lautenberg. But the government's brief says, well, there's an agency policy, and the boss of the agency has the right to decide who carries a gun and who doesn't. And there is adequate testimony, I think, in the record. We got the transcript and read it where the boss was saying, well, I have the authority to decide who gets a gun and who doesn't, and I would not let someone have a gun who did what he confessed to having done with the gun. And so the government is telling us that basically the arbitrator's decision was based on the policy, right, and assume that's true. Well, the arbitrator conflates the two. And, in fact, Mr. Montoya says that I didn't think he had the right to have a gun, not only based on the INS policy but based on the Lautenberg Amendment as well. And it's the agency's burden to show that they properly terminated this individual. And the agency cannot meet that burden when they conflate the NOLA contendory charge with a conviction and therefore sustain two charges that are inaccurate. And getting back to your last point, if they sustained the termination on both reasons and assuming, arguendo, that you disagree with the loss of qualification, you also have to consider that the NOLA contendory, the charges were dismissed ultimately. Before the arbitrator decided his case, the state of Texas dismissed the underlying criminal process due to the end of the probationary period, and therefore Specification 1 also cannot stand because, as shown in Roby and various other MSPB cases, when the conviction is dismissed and the basis for the termination is based on that conviction, then it can't stand. Now, in this case, there was no conviction, but the charge... Ms. Goldberg, you're going into rebuttal time. Do you want to save your rebuttal? Yes, thank you. Thank you very much. Ms. Stern. Good morning, Your Honors. May it please the Court. As Judge Prost noted from the outset, all of the elements under the specification for the first charge, conduct unbecoming an officer, were and are undisputed. For that reason, the arbitrator properly sustained that charge. Okay, well, let's just dice that. The charge essentially is pleading NOLA, right? That's the conduct involved. It's both, Your Honor. It's the totality of the charge. You got the text of the charge there? I absolutely do, Your Honor. April 29, you were arrested, right? So is it conduct unbecoming to be arrested? It is a combination of everything that is articulated under that specification. I can't take away from anything that's listed. You were arrested, you were indicted, right? And you pleaded, those three things. Arrested and indicted for two counts of aggravated assault, pled NOLA contendere to assault, received deferred adjudication, and placed on probation. I'm just trying to get at whether those three things establish conduct unbecoming. What would happen if it was a case of mistaken identity? It was his twin brother who did all this. Well, then presumably he would not have pled NOLA contendere. And the plea of NOLA contendere, as has been discussed, included an admission of guilt in two different places. Isn't that necessary to your case? You subsume, you take the pleading of NOLA contendere. In order to plead NOLA, you have to stand in front of the judge and say, Your Honor, I did it, right? Yes, Your Honor. But the prosecution and I have agreed to a no contest arrangement. And it's that admission that you say constitutes the basis for the conduct unbecoming. Yes, Your Honor, but I don't want to leave out any of the other elements. The question of whether, for example, the arrest alone would be sufficient to constitute conduct unbecoming is not really before this court. We have a totality of all the charges, and all of them, including the plea of NOLA contendere, are undisputed. And that charge should be sustained on that basis. Whether that charge is sufficient to justify a penalty of removal is a whole different question. But clearly, the charge was properly sustained because all of these elements that are in the specification are undisputed. Okay, so why don't you get to the other question you just raised, which is the question about whether or not that's sufficient to sustain a removal is another question. Assuming that we all know what you've already acknowledged, which is the reliance on Lautenberg on the cost of qualifications was an error. Which is not to say that the second charge wasn't properly sustained also. So if that's the impression that the court was getting that we were conceding some problem with sustaining the second charge, I want to correct that impression. Well, if you look at what, are we talking about the second charge? If you look at the second charge, can you identify the portion of the arbitrator's decision that deals with the second charge? Absolutely. If you turn, Your Honors, to Joint Appendix 15. Right. Finally, the union argues. Well, actually, even a little bit before that. At the very top of the page, the arbitrator sets out the union's claims, point three. The union's claim. Deals with reason two of the letter of proposed removal, letter of decision. And the arbitrator notes that the union is claiming that that second charge improperly focuses on the conviction. And the arbitrator rejects that. And says in the paragraph beginning here with the union argues. Not finally the union argues, but the union argues. In that paragraph, the arbitrator says a reasonable reading of the reason two specification, contrary to the union's argument, is that the effect of the grievance no contest plea, the loss of his right to possess a firearm, constitutes the charge. The arbitrator is rejecting the argument made by the union below, which is basically the same argument they're making on appeal. That the essence of reason two, specification two, is solely revolving around the conviction. The arbitrator is saying, no, it really revolves around the no low contender plea that the chief said was enough for him to then deprive Mr. Puente of the use of his weapon. The specification still goes back, though, to the issue of anyone convicted of a misdemeanor crime of domestic violence. That's the terms of the specification. What kind of notice does that give to a person to defend? The specification does refer to the Lautenberg, without using the words Lautenberg, but certainly the sections of the law that are the Lautenberg Amendment. It does, Your Honor. But it also talks about the policies of the Border Patrol Service and the authority to carry a weapon. That's in the paragraph that starts Title VIII? Yes. Where is there, and you haven't given us any information in the briefs about what those provisions of the code are. How do we know what the provisions of Title VIII Code of Regulations are? It deals here with proficiency requirements, demonstrated proficiency requirements that suggest that you've got to be able to shoot a gun straight in order to have one. Right. And be able to use the weapon properly. And it talks about the authority of Border Patrol. And then added to that is the chief's testimony during the arbitration proceeding. Show me in the arbitrator's decision where the arbitrator is relying on the chief's, on the policy, as opposed to Lautenberg. Well, I guess the only thing I can point to, again, is that Joint Appendix 15. Show me the language where, because your brief says they could not have had the firearm taken away because of Lautenberg. You concede that, correct? Yes, Your Honor. And you say in your brief the taking away of the firearm was permissible as an exercise by the chief of policy of the authority he had, right? Yes, Your Honor. Okay. And I think I would agree with you that there's some testimony that the chief gave to that effect. There is clearly testimony. Point to me, please, in the arbitrator's decision where the arbitrator relied on the policy that was vested in the authority and the chief to take the gun away. I think the best thing I can point to is that section that I was just talking about on Joint Appendix 15. I'm not asking the section. I'm asking you to show me the words. The specific words. And, again, I wouldn't say they are the most artful words. We're on page 15. Are we now in turning our attention to reason two? Yes. Okay. So I got my yellow highlighter out. Show me the language that refers to the policy. Okay. The only language, it doesn't use the word policy. Which one? So I won't say that there's anything in this arbitration decision that specifically talks about policy. I could not make that claim. Right. So which one? Where I think the arbitrator is referring not expressly but implicitly to the chief's exercise of his discretion. It's on Joint Appendix 15 where he first sets out the union's claim. I said the union claims three, reason two, improbably focused on the grievance. And then the arbitrator, two paragraphs down, beginning with the union argues, rejects that reading of the reason two specification and says, contrary to the union's argument, is the effect of the grievance no contest plea, the loss of his right to possess a firearm constitutes the charge. Now, again, those are the only words I can point to. Okay. So if we disagree with you, in all fairness, if we disagree with you and we say we don't believe that those two parts of the arbitrator's decision where he's talking about where arguments are being framed as opposed to the part of the arbitrator's decision where he's deciding, that we say no, that does not show that the arbitrator was relying on the chief and his testimony. If that's the case, then you would agree, would you not, that we would have to upset the arbitrator's decision on that issue? If you say no, I would agree on that issue, but I would urge the court in reading that language because I realize it is fairly bare. I can guarantee you we'll read it with great care. I just wanted to suggest that it be read in connection with the testimony of the chief before the arbitrator. But you see, the problem is we don't know whether the arbitrator may have discounted the chief's testimony. The arbitrator might have said to himself, well, the chief never told me what Title VIII says. The chief never gave chapter and verse about where his authority came from and what the extent of it was. And so the arbitrator might have said to himself, baloney to the policy argument, I'm going on Lautenberg. Because certainly the thrust of the arbitrator's decision where he's talking about it is that he's elevating this thing to a conviction environment, right? So I grant you that it takes some effort to read the arbitrator's decision. It takes maybe a little bit of reading between the lines. Okay, so now let me ask you the next question. Assume for purposes of argument that we agree with the government that the conduct on becoming charged was properly sustained by the arbitrator, but that we decide that the arbitrator relied on Lautenberg for the qualifications issue, which he shouldn't have done, so we're going to upset that piece of the puzzle there. So what do we do then under LaChance and Guise and the others? Well, under also Hathaway I have to cite to you, Your Honor. In Hathaway the court said that when not all of the charges are sustained by this court and where there is no indication that the agency would have selected a lesser penalty if only one charge was sustained, then this court can look at the remaining specification and the seriousness of that specification. Let's turn now to the charging letter, A369, dealing with we have reason one, conduct on becoming, the spec lays it out, no discussion at all. Bang, you've pleaded no, you're out of here for conduct. Then the balance of the letter is all about reason two, loss of qualification. What am I to make of the statement on A369, which is your inability to meet the necessary conditions of your employment, i.e., carry a gun, establishes the nexus in this matter? Well, as you yourself pointed out, Your Honor, we don't just have the proposal letter. We have the decision letter where both charges were collected together as reason for the penalty. We also have the chief's testimony concerning the penalty because the chief did testify before the arbitrator concerning the selection of the penalty and the consideration of the Douglas penalty. But he never said we would have removed you alone for conduct on becoming. That is true. He doesn't expressly make that comment. But if you look at that testimony as a whole, it becomes extremely clear that what the chief was most concerned about here was Mr. Puente's conduct. Over and over again he says it was Mr. Puente's conduct that gave me pause. It was Mr. Puente's conduct that made me not trust him. It was Mr. Puente's conduct, in fact, that led him to take away Mr. Puente's gun. That's what he says in his testimony. But if the charges were cumulative, then what? Excuse me, Your Honor. If the charges were cumulative in order to reach the result, if we fail to support one, wouldn't that really require us to send it back for reconsideration? No, again, not necessarily, Your Honor. Under Hathaway, which I cited just earlier, this court does have the ability when only one of the two charges is sustained to look at the charges and determine whether the penalty of removal would be appropriate. Well, that's in circumstances, but it's sort of a harmless error test that was expressed in Guise as well. Can we be convinced that it wouldn't, you know, that the error would be harmless if we were to decide to go ahead and sustain the removal? How can we be sure? I mean, it's clearly we have some evidence that the agency was more worried about the inability to carry a firearm than they were about the conduct unbecoming, because they say the nexus for proposing your removal is the fact that you can't carry a gun. I mean, maybe in this particular agency being a little violent is a good thing if you're out on the border. You've got to have enough courage, you know, to demonstrate a little violence, I get it. But when the court is looking at what penalty the agency would have selected for only the first charge, it can clearly look beyond just the proposal letter and even beyond the proposal and the decision letter to the testimony given during the arbitration. Do you have that? What testimony do you have and specifically have in mind? I know we've only got one copy of the record in the court, but we can look it up. Where was the deciding official? What's the best evidence in the record? This was in the transcript before the arbitrator, right, beginning on page 57 of that transcript. Fifty-seven. Fifty-seven. So it's not in the stuff, in the pieces. No, we called for the transcript and got it in one of our chambers. Right. We can look at page 57. Beginning on page 57, and it continues. And over and over again, the chief mentioned. What's the strongest language in your favor? Quote it to me, please. Okay. Let's see. Question on page 57. Well, it begins, question, did you consider the nature and the seriousness of the offense? That's lines 16 and 17. Answer, yes. Question, what did you consider probative of that particular aspect? Answer, in this case, I made the decision that Mr. Puente's conduct was so egregious that he should be removed from his position as a federal law enforcement officer. He's not saying I made the decision that his loss of a weapon was so egregious. I understand. Saying his conduct. It goes on in the next page on 58. Let's see. At the bottom, page line 23, question, what did you consider about your confidence on his ability to perform his job in the future? Answer, again, I lost all confidence in his ability to conduct the duties of a border patrol agent, federal law enforcement officer. That's why I made the decision to remove him. And then there are some other questions. And you perceive that to be conduct-based as well. Well, he keeps saying the word conduct. The thing you just read to me a moment ago said I've lost confidence in his ability to serve. You could lose confidence in the ability to serve if the person can't carry a weapon. Right? I wouldn't have much confidence in a border patrol's ability to fulfill his duty if he had a bean shooter. I suppose. I think the fairer interpretation is this. So he did not use the word. I'm asking you. I think he said to you. You're assuming that the boss, when he talked about loss of all confidence, it was as a result of the conduct. Perhaps as well as the inability to carry the gun. Yes, I think it's a fair inference, particularly because it follows the earlier. Is there another reference in the record to where he specifically talked about the conduct being so egregious? You cited the first one at A57. Thank you, Mr. Chairman. Well, I think that discussion continues on pages 58, 59, 60. At the bottom of page 60, beginning of lines 21, the chief is talking about the necessity for law enforcement officers to maintain the utmost integrity and professionalism in carrying out their duties. The community expects those individuals to protect them, not to react and assault them. So again there, the chief is focusing on the conduct, the assault. And is it halfway? I mean, is there a case? I mean, let's assume the letter of removal says nothing or even suggests that we need one of these. The case law is that testimony by a deciding official before the MSPB can give you the added specificity as to the basis upon which the removing of the deciding official took the action? Yes, I believe that is the case, although I don't think halfway necessarily stands for that proposition. Do you know what the case is? I really cannot cite the case, although I do believe that the court can look at what the agency, the evidence that the agency put forward concerning the selection of the penalty, the basis for the selection of the penalty during their testimony before the board. In other words, we need to weigh that evidence, though, in order to make a decision? Well, only in terms of maybe looking at whether the agency would have selected that penalty if it was only for one charge or if there was an indication that the agency, in fact, would not have selected that penalty because halfway says if all the charges are not upheld and the agency gives no indication that it would have selected a lesser penalty for just one of the charges, then this court can go ahead and look at the single sustained charge or the sustained charges, whatever the case may be, and decide if the penalty was appropriate or too severe. But your reading gives no indication to include what the deciding official may say before the MSPB in adjudication as opposed to the documentation you had leading up to it? Right. That's not in the Hathaway case. I would be happy to get back to the court with the case. I can't off the top of my head cite a case for that, but I do believe that that is true. Let me just follow up, if I could, just on not that I think the government conceded too much too soon. I understand you were responding to hypotheticals, but arguably I see the case a little different where two legs on a table, you lose one leg, you've got to go on the remaining leg. It seems to me here that the question with respect to reason two does not necessarily warrant that if Lautenberg is out the window, the charge falls completely. Let's assume that we reject your notion that we can accept as sort of an afterthought, hindsight, that the deciding official gets up and says, yeah, it was agency policy, blah, blah, blah. But nonetheless, because the agency relied on the wrong basis, if the agency indeed did or would have clearly taken away his gun, notwithstanding Lautenberg, is there some way we can salvage this spec, and how can we do that? Well, I think we can, because the charge is loss of qualification, meaning the loss of his weapon. Now, that is clear. He did lose his weapon, and the weapon was a qualification of his job. So right at the outset, we have a charge where the specification is, in fact, undisputed. The weapon was removed by the chief. It was the chief's decision not to return the weapon. Now, the question is, can the court go behind that and look at the reasons whether the chief actually withdrew the weapon because he thought he was compelled to in some way because of Lautenberg, or whether he did it because he was exercising his discretion. And I think an analogy can be made to cases involving employees who lose their jobs, for example, because they lose their security clearances. This court has said that it will not look behind the merits of the loss of the security clearance. Merely the fact that the employee has lost his security clearance, and that is a qualification for employment, is sufficient to sustain a removal on that basis. One of the problems, though, for you is, and I'm not sure the record would rehabilitate this, but I haven't seen anything in the transcript where the deciding official or whoever actually said that, we all concede Lautenberg doesn't apply, and there's any specific testimony by the deciding official or the person who took away the gun that even if Lautenberg doesn't apply, there's no way I would have ever let this guy have his gun back. Well, I think it's important to point out that the chief in his testimony before the arbitrator actually didn't cite to Lautenberg at all. He was asked, why didn't you return the weapon? And in the transcript beginning on page 42, he discussed why he didn't return Mr. Puente's weapon, and again he returns to that subject beginning on page 52, so 42 and 52. In neither of those discussions does he talk about Lautenberg. On page 42, beginning on line 20, he says, again, and his displaying of his weapon on an off-duty capacity in this incident violated service policy, and therefore in the best interest of the agency. Yeah, but he doesn't tell us what service policy. What service policy are we talking about? He did not articulate the specific service policy that was violated, but he did make clear that he was exercising his discretion to remove the weapon because he felt that Mr. Puente wasn't using it properly or shouldn't have possession of it based on his conduct. He says he violated service policy and therefore his weapon was removed. He doesn't say I was exercising my discretion under this policy, blah, blah, blah. He says it violated service policy. That's just like saying it violated Lautenberg. We know it's not true. You haven't given us any basis in the record. Point to something in the record to substantiate his statement that it violated service policy. Where is it? I can't point to something that the specific policy... So assuming this statement doesn't help you. Well, I think it still does help me, Your Honor, because he says in the best interest of the agency. I think that phrase, saying that he removed the weapon because it was in the best interest of the agency... But if you're writing a word, it says and therefore in the best interest of the agency, therefore being because it was a violated service policy. Is my reading not a fair reading? No, it does say therefore. So anything else that we could use in the record to satisfy ourselves, notwithstanding that we all know that Lautenberg did not compel the removal of the gun, that it's clear that this person would never have been allowed to carry his gun? Again, maybe Your Honor would interpret page 52 the same way, and I just read it a little differently. The same thing, the Chief says in line three, based on Mr. Puente's conduct, the use of a weapon threatening his expanse, I felt that it was in the best interest of the agency not to return the weapon to him. That to me is an issue. We come back to the fact that the arbitrator's decision nowhere reflects that the arbitrator was relying on that testimony, assuming that the discussion we had earlier that those two blips in the framing of the argument don't carry your day. It's really a process case, isn't it? I mean, the short of the matter is that the record reflects on charge one that Mr. Puente stood in front of a judge and said, I did it. I engaged in that conduct. That alone probably is enough if you charged it that way to say that's conduct unbecoming. It would be like if he confessed to his boss that he did it, bang, out. It wasn't papered that way, possibly. That's the argument of your adversary. Secondly, taking the weapon away was papered up as a Lautenberg problem. If it had been papered up correctly, then all the testimony you referred to in the record would jive to the charge and would all fit. Why shouldn't the government be made to turn square corners? And on the first charge, I think there's no question that the government completely gave Mr. Puente clear notice of what he was being charged with. He clearly understood that in both his written and his oral reply. He directly responded to the underlying charges. He couldn't deny the facts of the arrest, indictment, and plea of no low contender. But he did reply to the underlying charges. I think there's absolutely no problem with the way the papering up of the first charge is done. Well, I agree. I mean, I tend to agree with you on point one, and I tend to disagree with you on point two. And I just say I don't see the harm in requiring the government to turn square corners. I mean, if somebody down there in Laredo seems to think that Lautenberg applies across the board, they're wrong. Well, on point two, I was responding to Judge Proulx's question about whether point two could be salvaged. And I think that it can be because I think that there is. And we're reviewing. You know, we're not reviewing what we think is likely to happen if this thing had been papered up or had been done correctly. We're reviewing what the arbitrator wrote down on a piece of paper. Right. And there are two ways that the court could go on this. If the court sustains only the first charge, the court can still find that removal was an appropriate penalty, can still look at that penalty under Hathaway, as I suggested to the court. The other way is that the court can find that both charges were properly sustained, because the second charge was loss of qualifications, meaning loss of a weapon. He did lose his weapon. The court can find that it does need to go. Or we could find neither charge is sustained and reversed. Well, of course, that is always a third way, but not one that we think is appropriate. Can I add one clarifying question? Yes. As I read the record, what happened was after the arrest and the indictment, but before the plea, Mr. Puente was put on suspension without pay. Am I correct? Yes, Your Honor. And so he was in suspension without pay at the time of his removal. That's correct. If we were to reverse, he would be returned to suspension without pay? Is that where he would go, to the position he was in when he was removed? Well, the indefinite suspension, which is the suspension without pay, normally ends at the time that the agency takes the subsequent adverse action. So in this case, the indefinite suspension would have ended as of the time that Mr. Puente was removed. So, no, he wouldn't be returned to a state of indefinite suspension. That action is over. I'm trying to get at whether there's back pay involved. He would be reinstated and entitled to back pay going back to the date that the indefinite suspension ended, which would have been the date of his removal. The indefinite suspension action was not before the arbitrator. It's not before the court, and so that would still stand undisturbed. In the time period that it was on indefinite suspension without pay, he wouldn't be entitled to pay. He would only be entitled to pay dating back to the time that he was actually removed. I don't want to make your case for you, but it seems to me, is there not an argument that the indefinite suspension, you're right, concluded because at the time he was removed. But if we were to undo the removal, wouldn't that necessarily put him in the position he was in, or he would have been in, absent the removal, which is back to the indefinite suspension, as opposed to what you seem to have conceded a few minutes ago, that no, he would arguably be entitled to back pay starting from the date of the removal letter. Am I wrong? I take your point, Your Honor, and actually I would have to say that I don't know the answer to that question. I think that that's a reasonable argument, and perhaps I conceded too quickly on that one. Thank you, Ms. Stern. Thank you, Your Honor. Ms. Goldberg, since there were so many more questions for the government, we'll add five minutes to your rebuttal time, so you'll have a total of seven. Thank you. I appreciate that, Your Honor. Before I forget, can I just ask you one point to follow up, and you may have already covered this. Do you have a case, do you know of a case that stands for the proposition or the opposite, the government, to the question of the government, whether or not you can use testimony before the MSPB by the deciding official as to what reliance he would have given to the various charges, whether that is sufficient for us to resolve the issue of whether or not one charge would be sufficient to sustain the removal. What I have, Your Honor, is nearly Underwood, which talks about whether you can reach beyond the charging documents as an arbitrator to decide whether the charge is sustainable. And in Underwood, they say no, you can't reach to additional evidence relied upon by the deciding official, which is why we say that it's dispositive in this case. And in addition to that case. If you go back to LaChance v. DeVal and understand what it was that drove that decision, before LaChance, the MSPB thought it had the authority to decide what the requisite penalty was when it kicked one leg out of money at the table. And it was saying, we alone have that authority. And what the court was saying is, no, no, no, you don't have that authority. What you're trying to do is to get inside the mind of the agency to find out what the agency would have done if the agency had only made one charge instead of two. And so what the case law has reflected is the search for the intent of the agency. If the MSPB or this court, as we said in the most recent wheeze, if this court can assure itself that the agency would have gone this direction instead of that direction, based on the record that we have, then we can affirm a penalty or we can decide that it has to go back or wherever it has to go. So the search is in the record to try to find out what the agency had in mind. I would agree with you, Your Honor. I would say that also Fitzgerald v. Department of Army, which is also an MSPB case, is also important to review because in that case the MSPB says you either sustained it correctly or you did not sustain it correctly. And if you did not find it correctly, the termination correctly, we're undoing it all. So I would say that that case is also important to review. Well, aren't you saying when the issue is unclear as to what the agency would have done, then the penalty has to be sent back? I'm saying that the agency has a high burden of proof to show that the reason for their termination, it was the agency's burden of proof to show that the reason for the termination was appropriate. They have a preponderance of evidence burden of proof. And if they have failed to meet that burden of proof, then the termination in its entirety cannot stand. But assuming we send it back because it's not clear as to what the agency would have done, we can sustain one of the charges, but the other charge we send it back. Now, does that mean that the agency cannot go back and reassess the penalty only on one charge, or do we have to clear both charges? I would say that the agency could not go back to reassess it based on one charge, and there was a recent case decision about that, and I don't remember the name of it, but I would be happy to look for it. Well, we have a case called Murkowski, which is at 252 Fed Third 1344 in 2001, which specifically states that because it's unclear what penalty would have been imposed for only the two charges here were affirmed, we vacate the board's decision and sustain the removal and send it back and remand it. I think remand would be appropriate, Your Honor, in this case, if you were to sustain one and not sustain the other. But they can reassess it and reevaluate it and still maintain the dismissal based on one charge at that point. But, again, well, you see, Your Honor, the problem for us is that we don't feel that either charge is sustainable. I know, but we may disagree with you. What are you going to do with the testimony that page 57 that Ms. Stern referred to where the deciding official said this is conduct so egregious? That's what I remember Ms. Stern having read. Conduct so egregious we can't have this person around. Well, I would refer you to two other places is what I would do, Your Honor. And the first place I would refer you to is actually in the Joint Appendix, and it's at Joint Appendix 74 and 75. 74. And that's the location in which the agency is talking about how they really feel that the underlying conduct was the issue, and they refer to a plea memorandum. And the union says, well, wait a moment, we've never seen that plea memorandum, and it was not included in the package upon which you claimed you relied upon in making the decision to terminate. And that is where my understanding is that is where the allocution was named. And the second thing that I would turn you to, and I think this is key. Well, that's your way of saying there was no admission of bad conduct? No, that's my way of saying that the agency's claim at hearing that they relied upon the underlying conduct is flawed because the package that they gave to support their decision did not include much of that underlying conduct. So that is what I would say. Did Mr. Pointy need a copy written down of the words that he had uttered in open court? He did not, but he did have a due process right to know upon what he was defending himself for the termination. But, I mean, is your best shot at undoing the testimony that Ms. Stern looked at a process error? I would say yes, Your Honor. It was a due process violation. But if I reject that, if I say to you with all due respect I reject your process argument, I don't think that Mr. Pointy needed to see that piece of paper. And so we have the deciding official saying your conduct was so egregious, out of here. If I credit that testimony that Ms. Stern looked to, then why can't I sustain the removal based simply on charge one? Because, Your Honor, there's something else that Chief Montoya says which simply cannot be overlooked, and that's on page 72, and it's repeated throughout, I'm sorry, page 72, Joint Appendix 99. And he repeats this throughout his testimony, and it's the simple equation in Chief Montoya's mind that nolo contendere equals plea of guilt and a conviction. He says, in my opinion, his plea. Where are you? You're in the printed record 72? Yes, which is Joint Appendix 99, line 13. And he says, in my opinion, his plea of nolo contendere was equivalent to a plea of guilty and therefore was convicted. And when you look at what the Chief relied upon, he really also relied upon his heartfelt belief that there was a plea of guilt and a conviction, and that cannot be dismissed lightly. That is the bulk of his belief upon which he based his sustaining the specifications of this information. Well, this basically goes back, it segues back into your main argument on charge one. Charge one and reason one and reason two. Right, but I mean, if we reject you on charge one and we say basically what the deciding official was saying was this whole nolo plea was somebody stood up there and said, I admitted that I did this conduct, right? Then if I connect that up to the language that Ms. Stern pointed to where the presiding officer said that conduct is so egregious you're not entitled to keep your job, then I ask you again, wouldn't that under the law be sufficient to sustain the removal penalty? No, it would not have been because simply because that charge was later dismissed by the state court. The charge was dismissed because that's what happens when you fulfill the terms of a nolo plea, the grand eraser, like on the blackboard, takes it all away. But it never takes away, I don't believe, the fact that someone stood in open court and professed to the world that they had engaged in specific conduct. That's correct, but then again I would ask you, where is that in the charging documents? It's nowhere. It's nowhere in the case proposal. I agree with you that you have to make, I would think you would have to make the decision that where your offense was pleading nolo, which you were arrested, indicted, and pleaded, that you subsume in the nolo charge the fact that you stood in open court and confessed to the conduct. Well, then I would take you back to a different argument, which we haven't spoken about at all, which was that there was an allegation of a contract violation, that the union contract with the agency required the agency to proceed expeditiously to the adverse action. And in this case, Probably not kosher rebuttal because the issue wasn't raised. It was not raised. No, but I understand. I'm just saying that it's in response to your question. Thank you, Ms. Goldberg. Thank you. The case is submitted.